ORIGINAL

Approved: _____
          NOAH FALK
          Assistant United States Attorney

16 MAG    0208

Before:   HONORABLE JAMES C. FRANCIS IV
          United States Magistrate Judge
          Southern District of New York

U.S. DISTRICT COURT FILED
JAN 12 2016
S.D. OF N.Y.

------------------------------------ X
                                     :
UNITED STATES OF AMERICA             :   SEALED COMPLAINT
                                     :
            -v.-                     :   Violation of 18 U.S.C.
                                     :   § 371
PRINCE BRADLEY,                      :
    a/k/a "P,"                       :   COUNTY OF OFFENSE:
            Defendant.               :   NEW YORK
                                     :
------------------------------------ X

DOC # __ __

SOUTHERN DISTRICT OF NEW YORK, ss.:

        TIMOTHY P. AUMAN, being duly sworn, deposes and says that he is a Special Agent with Homeland Security Investigations ("HSI"), and charges as follows:

COUNT ONE
(Conspiracy to Utter Counterfeit Traveler's Cheques)

        1.   From at least on or about March 2, 2015 through on or about June 18, 2015, in the Southern District of New York and elsewhere, PRINCE BRADLEY, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, to wit, BRADLEY agreed with others to sell counterfeit traveler's cheques, in violation of Title 18, United States Code, Section 513.

        2.   It was a part and object of the conspiracy that PRINCE BRADLEY, the defendant, and others known and unknown, knowingly, and with intent to deceive another person, organization, and government, would and did make, utter and possess a counterfeited security of an organization, and uttered and possessed a forged security of an organization, in violation of Title 18, United States Code, Section 513.

Overt Acts

3. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. On or about April 12, 2015, PRICE BRADLEY, the defendant, contacted a cooperating witness ("CW-1")[1] by telephone, and offered to sell counterfeit traveler's cheques to CW-1.

    b. On or about April 14, 2015, BRADLEY met with CW-1, at which time BRADLEY sold 100 counterfeit traveler's cheques to CW-1 for $1,600.

    c. On or about May 21, 2015, BRADLEY agreed to sell 200 counterfeit traveler's cheques to CW-1.

    d. On or about May 21, 2015, a co-conspirator not named as a defendant herein ("CC-1") sold 200 counterfeit traveler's cheques to CW-1 for $3,200.

(Title 18, United States Code, Sections 371.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

4. I am a Special Agent with Homeland Security Investigations ("HSI"). I have been employed by HSI since approximately February 2012, and was previously a Special Agent with the United States Secret Service ("USSS") from approximately August 2006 through February 2012. I am currently assigned to the Special Investigations Unit at HSI, where I focus on financial crimes and money laundering investigations. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses and others, as well as my examination of reports, records, and audio recordings. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where

---

[1] On or about November 5, 2014, CW-1 was charged with federal fraud offenses, including offenses involving passing counterfeit traveler's cheques. CW-1 is cooperating in the hope of receiving leniency at sentencing.

the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

     5. Since approximately 2009, in both my prior capacity as a USSS Special Agent, and in my current capacity as a HSI Special Agent, I have investigated individuals involved in producing, distributing, and passing counterfeit traveler's cheques.

     6. Since approximately April 2011, the USSS has been investigating a fraud ring that is believed to have, among other things, produced, distributed, and passed at least one series of counterfeit traveler's cheques that purported to be from a business that sells traveler's cheques ("Company-1"), and is headquartered in the Southern District of New York.[2] I know from my experience with this investigation that counterfeit traveler's cheques commonly contain distinct errors in at least two particular security features on the traveler's cheques. According to records provided to USSS and HSI by Company-1, passing of counterfeit traveler's cheques has generated approximately $20 million in collective loss since 2008. The cheques at issue in this investigation represent a portion of that loss.

### April 14 Sale of Counterfeit Traveler's Cheques

     7. In the course of this investigation, I have spoken with CW-1, who I know to have been involved in the fraud ring described above, and who has since been charged with federal offenses, including but not limited to wire fraud in connection with a clothing theft scheme. Based on my conversations with CW-1, I have learned the following:

     a. An individual CW-1 knew as "P" (later identified as PRINCE BRADLEY, the defendant, as described further below), contacted CW-1 by telephone on or about April 12, 2015, and in sum and substance, offered to sell CW-1 counterfeit traveler's cheques. "P" informed CW-1 that he would be required

---

[2] Based on my training and experience, and my participation in this investigation, I have learned that traveler's cheques are pre-printed, fixed-amount cheques that allow the person signing them to make an unconditional payment to another individual. Company-1 traveler's cheques each contain an alpha-numeric identifier, and also contain certain distinct proprietary security features with which I am familiar.

3

to pay $16 for each counterfeit traveler's cheque, each of which would have a face value of $100.

        b.    On or about April 13, 2015, CW-1 received another telephone call from "P." During that telephone call, CW-1 informed "P," in sum and substance, that he was interested in purchasing 100 counterfeit traveler's cheques on the following day.

        8.    On or about April 14, 2015 at approximately 5:30 p.m., at the direction of law enforcement, CW-1 placed a consensually recorded call to "P." I have learned the following from my review of a recording of that call:

        a.    Among other things, and in sum and substance, CW-1 indicated that he was in Brooklyn, New York, and "P" indicated that he was in Edgewater, New Jersey. "P" instructed CW-1 to meet him at a particular store ("Store-1") in Edgewater. "P" confirmed that he had 100 counterfeit traveler's cheques ready for CW-1 to purchase.

        9.    Based on my participation in this investigation, including participating in physical surveillance, I learned and observed, in substance and in part, the following:

        a.    Following the telephone call described in paragraph 8 above, law enforcement agents provided CW-1 with $1,600 in order to purchase the 100 counterfeit traveler's cheques from "P." Agents then conducted mobile surveillance on CW-1 as he traveled from Brooklyn, through the Southern District of New York, to the parking lot of Store-1 in Edgewater, New Jersey, where CW-1 arrived at approximately 6:50 p.m.

        b.    At approximately 7:15 p.m., at the direction of law enforcement, CW-1 contacted "P" and informed him, in sum and substance, that CW-1 had arrived at Store-1 and was ready to buy the traveler's cheques. At approximately 7:32 p.m., a black BMW (the "BMW") arrived at the parking lot of Store-1. CW-1 exited his vehicle and entered the BMW. At approximately 7:40 p.m., CW-1 exited the BMW, and the BMW left the parking lot of Store-1.

        c.    CW-1 subsequently met with agents, and provided them with a white envelope containing 100 traveler's cheques. I reviewed the traveler's cheques and, based on my experience and familiarity with their security features, I believed them to be counterfeit.

4

    d. CW-1 informed agents that "P" provided the 100 traveler's cheques to CW-1 in exchange for $1,600.

   10. CW-1 was subsequently shown a photograph array of six different individuals, at which time, CW-1 identified a photograph of PRINCE BRADLEY, the defendant, as "P," the individual who sold him the traveler's cheques.

   11. I have reviewed public records, including records of the New Jersey Motor Vehicle Commission, showing that the BMW described above is registered to an apartment in Edgewater, New Jersey, where PRINCE BRADLEY, the defendant, resides, although the BMW is not registered in BRADLEY's name.

<u>May 21, 2015 Sale of Counterfeit Traveler's Cheques</u>

   12. On or about May 21, 2015 at approximately 10:00 a.m., at the direction of law enforcement, CW-1 placed a consensually recorded call to PRINCE BRADLEY, the defendant. I have learned the following from my review of a recording of that call:

    a. CW-1 and BRADLEY discussed, in substance and in part, a potential purchase by CW-1 from BRADLEY of 200 counterfeit traveler's cheques for a price of $3200. BRADLEY stated, in sum and substance, that the traveler's cheques would not be "ready" for approximately an hour, and that CC-1 would deliver the cheques to CW-1 at a certain location in Brooklyn, New York.[3]

   13. Based on my participation in this investigation, including participating in physical surveillance, I learned and observed, in substance and in part, the following:

    a. Following the telephone call described in paragraph 12 above, law enforcement agents provided CW-1 with $3,200 in order to purchase the 200 counterfeit traveler's

---

[3] Based on my participation in this investigation, including conducting surveillance and participating in conversations with other law enforcement agents, I have learned that PRINCE BRADLEY, the defendant, resides in Edgewater, New Jersey, and regularly travels from Edgewater, New Jersey, through the Southern District of New York, in order to sell counterfeit traveler's cheques in Brooklyn, New York, including on or about May 21, 2015.

cheques from BRADLEY. Agents then conducted mobile surveillance on CW-1 as he traveled to the predetermined location in Brooklyn, New York.

   b. At approximately 1:30 p.m., CC-1 was observed by law enforcement agents arriving in the vicinity of the predetermined location. Agents then observed CC-1, who was carrying a shopping bag, enter the vehicle in which CW-1 was located. CC-1 exited CW-1's vehicle approximately 10 minutes later without the shopping bag.

   c. CW-1 subsequently met with agents, and provided them with the shopping bag that CW-1 stated he received from CC-1. The shopping bag contained 200 traveler's cheques. I reviewed the traveler's cheques and, based on my experience and familiarity with their security features, I believed them to be counterfeit.

  14. CW-1 wore a recording device for the duration of the meeting with CC-1. I have learned the following from my review of the recording made by CW-1:

   a. CC-1 and CW-1 discussed the price of the counterfeit traveler's cheques. CC-1 stated, in sum and substance, that that the price for the cheques would be $3,400 rather than $3,200.

   b. CW-1 then placed a telephone call to PRINCE BRADLEY, the defendant. CW-1 and BRADLEY agreed, in sum and substance, that the price of the traveler's cheques would be $3,200.

  15. I have conferred with a representative of Company-1 (the "Representative"), and have shown him the 100 traveler's cheques sold by PRINCE BRADLEY, the defendant, to CW-1 on or about April 14, 2015. I have also shown the Representative the 200 traveler's cheques sold by CC-1 to CW-1 on or about May 21, 2015. I am informed by the Representative that all 300 traveler's cheques are counterfeit traveler's cheques, from a series of counterfeit traveler's cheques known to Company-1.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of PRINCE BRADLEY, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
TIMOTHY P. AUMAN
Special Agent
Homeland Security Investigations

Sworn to before me this
12th day of January, 2016

_____
HONORABLE JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK